JAMES A. BAUGHER & PATRICIA A. BAUGHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baugher v. Commissioner
Docket No. 3986-84.
United States Tax Court
T.C. Memo 1985-420; 1985 Tax Ct. Memo LEXIS 214; 50 T.C.M. (CCH) 757; T.C.M. (RIA) 85420; August 13, 1985. *214 Held: Petitioner's employment as a journeymen pipefitter was indefinite. Thus, a deduction for expenses to travel to and from work incurred during 1981 is not allowable under section 162(a)(2). James A. Baugher, pro se. Helen Theo, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in petitioners' income tax of $1,453.07 for 1981. The only issue for decision is whether petitioners are allowed to deduct *215 expenses incurred in 1981 for meals, lodging and travel to and from work under section 162(a)(2). [1]
FINDINGS OF FACT Some of the facts have been stipulated. Petitioners resided in Athens, Alabama, when they filed the petition in this case and during the year in issue. Petitioner James A. Baugher (petitioner) is a steamfitter by trade. [2] In July 1978, petitioner began to work as a journeyman steamfitter for the Tennessee Valley Authority (TVA) at the Bellefonte Nuclear Project (Bellefonte project) in Hollywood, Alabama[3]. During the period September 6, 1979 to November 14, 1980, petitioner worked as a steamfitter-sketchman, which is a special trade within the steamfitter classification with a higher pay scale. Also if a sketchman is laid off, he could resume steamfitter work under roll back rights. *216 When petitioner was employed by TVA, his type of appointment was a Trades and Labor Construction Hourly, with a termination date approximately one year later. Effective October 1978, the appointment was changed to one with no termination date. Workers under this appointment were employed until their services were no longer needed. The word "temporary" was used by TVA to distinguish hourly workers from salaried workers. Petitioner remained employed until October 5, 1983, when TVA terminated petitioner's employment because of a reduction in force. The requirments at the Bellefonte project for steamfitters [4] for the year 1980, as projected in 1979, were 800 although 1,416 were actually employed. The requirements for the year 1981, as projected in 1980, were 146 although 1,506 were actually employed. During 1980, 132 steamfitter-welder assignees were employed and out of that number only 39 were laid off. An assignee lacks the qualifications of a journeyman but has at least ninimum skills in the particular trade. Assignees within a trade are laid off before journeymen. *217 We take judicial notice of the following facts found in , which also involved the Bellefonte project. The Bellefonte project in 1978 had a projected completion date of 1983.This completion was revised as follows: [5]
Time of Revised Projection
Revised Projected Completion Date
April 1979
August 1985
May 1980
August 1986
Housing in the Bellefonte project area for workmen was critically short during this period. During 1981, petitioner drove from his residence in Athens, Alabama, to the Bellefonte project on a daily basis. The distance between the two is 75 miles and thus, a round trip in 150 miles. On their return for the 1981 taxable year, petitioners deducted the sum of $5,100 as an employee business expense, consisting of $3,600 for meals and lodging [6] and $1,500 for automobile expenses. This deduction was disallowed by respondent. *218 OPINION Respondent argues that petitioner is not entitled to deduct the expenses at issue because (1) the expenses were not incurred "while away from home"; (2) petitioner's residence in Alabama was maintained for personal rather than business reasons; and (3) petitioner's employment by TVA was indefinite rather than temporary. Personal expenses are ordinarily not deductible. Section 262. Section 162(a)(2), however, allows the taxpayer to deduct certain expenses if they are traveling expenses paid or incurred while "away from home in the pursuit of a trade or business" if he can establish they were: (1) Reasonable and necessary traveling expenses; (2) incurred while "away from home"; and (3) incurred in pursuit of a trade or business. ; . This Court has held that a taxpayer's "home" for the purposes of section 162(a)(2) is the vicinity of his principal place of business whenever his personal residence is not located in the same vicinity. ; . *219 There is however an exception to this rule when a taxpayer with a well-established tax home accepts temporary employment as opposed to indefinite or indeterminate employment elsewhere. In this context, temporary employment means the sort of employment in which termination within a short period of time could be logically expected and foreseen. , affg. a Memorandum Opinion of this Court; . See also . On the other hand, whenever termination of employment cannot be expected or foreseen within a fixed or reasonably short period of time, the taxpayer's tax home shifts to such place of employment so that he cannot satisfy the "away from home" requirement. . Furthermore, when employment which was temporary in contemplation at the date of its commencement becomes indeterminate in duration, then "the situs of such employment for purposes of the statute becomes the taxpayer's home." . *220 Employment may change from temporary to indefinite due to changed circumstances or simply by the passage of time. . Whether a taxpayer's employment is "temporary" as opposed to "indefinite," "substantial," or "permanent" is a question of fact. ; ;Among the relevant factors to be considered is whether the taxpayer logically expected that the employment would last for a short period of time or that the job itself would not extend beyond a reasonably brief duration. The burden of proving that his employment was temporary rests on petitioner. ; Rule 142(a). In the present case it is clear that during 1981 termination of petitioner's employment on the Bellefonte project could not be logically expected or foreseen within a fixed or reasonably short period of time. The contract of employment, from the fall of 1978, provided that petitioner would *221 be employed until his services were no longer needed. The fact that petitioner's contract stated that he was a temporary employee is not determinative of the issue herein. ; . We understand the confusion caused by the fact that the meaning of the word "temporary" in petitioner's contract is different from the meaning of the word "temporary" as a term of art for business expense purposes under section 162. In view of the extensive judicial precedent on this tax issue, petitioners must look to the Congress for establishment of a different rule. The projected completion date for the Bellefonte project was continuously revised and extended into the future. There was no reason to believe during 1981 that the job would not extend indefinitely into the future. The fact that a relatively small number of layoffs of steamfitter-welder assignees occurred during the year in issue does not lead us to conclude that petitioner's job would terminate within a short period of time by reason of being laid off. And in fact his *222 job continued. Beginning in 1978 and up through the year at issue, the number of steamfitter-welder positions increased. Neither is it relevant that it may not have been reasonable for petitioner to have acquired a permanent residence in the area of the Bellefonte project if one could have been located. It is clear from the record that during 1981 petitioner's employment was indefinite. Petitioner has not met the "away from home" requirement; hence petitioner's expenses (including the cost of meals consumed) are not deductible under section 162(a)(2). [7]
Decision will *223 be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. It is stipulated that petitioner is a pipefitter; however, the terms "pipefitter" and "steamfitter" are used interchangeably. Since the testimony and documentary evidence refer to steamfitters, we use that term in our Opinion. ↩
3. This is one of a group of six cases involving hourly workmen at the Bellefonte project, all of whose cases were consolidated for trial only.↩
4. We assume that these statistics include steamfitter-sketchmen. However, during all of the years in issue, petitioner worked only as a journeyman steamfitter.↩
5. Although the completion dates have been revised, no reactors have been deferred or cancelled at the Bellefonte plant.↩
6. Petitioner testified that he incurred no lodging expense and his meals were breakfasts and lunches, estimated to have cost between $1.50 and $2.50 for breakfasts and $2.00 to $4.00 for lunches. His tax return preparer derived the $3,600 figure in some unknown fashion. Our disposition of this case makes this matter immaterial.↩
7. Our attention was called to two summary opinions, Cook v. Commissioner, T.C. Summary Opinion 1980-752, and Atnip v. Commissioner,↩ T.C. Summary Opinion 1980-761, which petitioner believes to have involved employment on the Bellefonte project. In each case the taxpayers were allowed travel expense deductions. Neither opinion sets forth the facts of this particular case so we cannot compare those cases to any of this group of six cases. However, those were summary opinions and they are not precedent for any other case, although we of course recognize that all of our opinions should be consistent.